http://www.va.gov/vetapp16/Files3/1621728.txt

Citation Nr: 1621728 
Decision Date: 05/31/16 Archive Date: 06/08/16

DOCKET NO. 08-23 495 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Montgomery, Alabama

THE ISSUES

1. Entitlement to service connection for pancreatitis.
 
 2. Entitlement to an initial rating in excess of 10 percent for lumbar disc disease and chronic lumbar strain (lumbar spine disability).
 
 3. Entitlement to an initial rating in excess of 10 percent for post-operative residuals of left ankle surgery (left ankle disability).
 
 4. Entitlement to an initial compensable rating prior to September 20, 2013 and 20 percent thereafter, for left foot numbness.

5. Entitlement to a total rating based on individual unemployability (TDIU) due to service-connected disabilities. 

REPRESENTATION

Appellant represented by: Disabled American Veterans

WITNESS AT HEARING ON APPEAL

Veteran

ATTORNEY FOR THE BOARD

B. Muetzel, Associate Counsel

INTRODUCTION

The record reflects that the Veteran had active duty service and several periods of active duty for training (ADUTRA) and inactive duty for training (INACDUTRA) in the Army National Guard from February 1981 to July 2004. The service department has reported conflicting dates of active service during this period, but the Veteran reported in her claim for benefits that the period of active service was from November 2002 to July 2004.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from February 2007 and October 2007 rating decisions of the Department of Veterans' Affairs (VA) Regional Office (RO) in Montgomery, Alabama.

The February 2007 rating decision granted service connection for lumbar spine and left ankle disabilities and assigned a 10 percent rating for each disability, effective October 20, 2005. The rating decision also denied service connection for pancreatitis and deferred the rating for left foot numbness.

In the October 2007 rating decision, the RO granted service connection for left foot numbness secondary to a service connected lumbar spine disability. The condition was rated noncompensable and combined with the evaluation for the service-connected lumbar spine disability.

In November 2013, the RO increased the rating for left foot numbness to 20 percent disabling, effective September 20, 2013.

The Veteran testified before the undersigned at a Board videoconference in July 2014. A transcript of the hearing has associated with the claims file.

In October 2014, the Board remanded the claims for additional development, and they have been returned to the Board for adjudication. 

During her September 2013 VA examination, the Veteran reported that she had been unemployed since leaving the military in 2004. She reported that she was not working due to problems standing and reported that she no longer drove due to not feeling safe. Given this, a TDIU claim has been raised by the record. See Rice v. Shinseki, 22 Vet. App. 447 (2009). The Board has jurisdiction to consider entitlement to a TDIU in this instance; thus the issue is added for appellate consideration. See VAOPGCPREC 6-96 (Aug. 16, 1996); see also Caffrey v. Brown, 6 Vet. App. 377, 382 (1994).

This appeal was processed using the Veterans Benefits Management System (VBMS) paperless claims processing system. Accordingly, any future consideration of this Veteran's case should take into consideration the existence of this electronic record.

The issue of entitlement to a temporary total disability rating under 38 C.F.R. § 4.29 based upon convalescence from September 18, 2007 to December 17, 2007 has been raised by the record, but has not been adjudicated by the Agency of Original Jurisdiction (AOJ). See Letter dated January 2008. Therefore, the Board referred this issue in its October 2014 remand, but the AOJ did not adjudicate it. It is again referred to the AOJ for appropriate action. 38 C.F.R. § 19.9(b) (2015). 

The issues of entitlement to service connection for pancreatitis; a TDIU; an initial rating higher than 20 percent for the low back disability from February 25, 2010 to September 19, 2013; and in excess of 10 percent effective September 20, 2013; as well as extraschedular ratings for the low back, left foot numbness and left ankle disability are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).

FINDINGS OF FACT

1. Prior to February 25, 2010, the Veteran's lumbar spine disability was manifested by recurrent low back pain with forward flexion to 80 degrees, at worst, and combined range of motion to 220 degrees, at worst; there was no muscle spasm, guarding, or localized tenderness severe enough to cause an abnormal gait or abnormal spinal contour, or incapacitating episodes of intervertebral disc syndrome.

2. From February 25, 2010, to September 19, 2013, the Veteran's lumbar spine disability was manifested by forward flexion to 50 degrees, and a combined range of motion to 130 degrees.

3. For the entire period on appeal, the Veteran's left ankle disability has been manifested by marked limitation.

5. For the entire period on appeal, the Veteran's left foot numbness has been manifested by moderate impairment that is wholly sensory in nature. 

CONCLUSIONS OF LAW

1. Prior to February 25, 2010, the criteria for an initial disability rating in excess of 10 percent for a lumbar spine disability have not been met. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. §§, 4.7, 4.71a, Diagnostic Code 5242 (2015).

2. From February 25, 2010, to September 19, 2013, the criteria for an initial disability rating of 20 percent, for a lumbar spine disability were met. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. §§, 4.7, 4.71a, Diagnostic Code 5242 (2015).

3. For the entire period on appeal, the criteria for an initial disability rating of 20 percent, but no higher, for a left ankle disability have been met. 38 U.S.C.A. § 1155, 5107 (West 2014); 38 C.F.R. §§ 3.321, 4.40, 4.45, 4.71A, Diagnostic Code 5271 (2015).

5. For the entire period on appeal, the criteria for an initial disability rating of 20 percent, but no higher, for left foot numbness have been met. 38 U.S.C.A. § 1155, 5107; 38 C.F.R. §§ 3.321, 4.7, 4.10, 4.123, 4.124, 4.124a, Diagnostic Code 8520.

REASONS AND BASES FOR FINDINGS AND CONCLUSION

I. Duties to Notify & Assist

The Veterans Claims Assistance Act of 2000 (VCAA) and implementing regulations require VA to provide claimants with notice and assistance in substantiating a claim. See 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a).

A notification letter was sent in November 2005 that complied with the requirements of the VCAA. See 38 U.S.C.A. § 5103; 38 C.F.R. §3.159(b).

The duty to assist the Veteran in the development of claims includes assisting him in the procurement of pertinent treatment records and providing an examination when necessary. 38 C.F.R. § 3.159.

All pertinent, identified medical records have been obtained and considered. The Veteran was afforded VA examinations in December 2005, July 2007, February 2010, and September 2013 in relation to her claims of entitlement to service connection for lumbar spine disability, left ankle disability, and left foot numbness. With respect to the lumbar spine disability, left ankle disability, and left foot numbness, the examinations addressed the pertinent criteria. The Veteran has asserted that she believes she should be examined by a licensed doctor in the evaluation of her claims. However, as will be discussed below, the Board finds that the examination reports concerning her appeals for a lumbar spine disability, a left ankle disability, and left foot numbness are adequate for rating purposes because the examiners reviewed the claims file or were otherwise informed of the relevant facts of the Veteran's medical history, considered the contentions of the Veteran, thoroughly examined the Veteran, and described each disability in sufficient detail so that the Board's evaluation is an informed determination. See Stefl v. Nicholson, 21 Vet. App. 120, 124-25 (2007); Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 303-04 (2008).

The Agency of Original Jurisdiction (AOJ) substantially complied with the remand orders, and no further action is necessary in this regard. See D'Aries v. Peake, 22 Vet. App. 97, 105 (2008); Dyment v. West, 13 Vet. App. 141, 146-47 (1999) (remand not required under Stegall v. West, 11 Vet. App. 268 (1998), where the Board's remand instructions were substantially complied with), aff'd, Dyment v. Principi, 287 F.3d 1377 (2002).

As VA satisfied its duties to notify and assist the Veteran, there is no further action to be undertaken to comply with the provisions of 38 U.S.C.A. §§ 5103(a), 5103A, or 38 C.F.R. § 3.159, and the Veteran will not be prejudiced as a result of the Board's adjudication of her claim.

II. Disability Evaluations

Disability ratings are assigned in accordance with VA's Schedule for Rating Disabilities and are intended to represent the average impairment of earning capacity resulting from disability. 38 U.S.C.A. § 1155 (2015). The Board has a duty to acknowledge and consider all regulations that are potentially applicable. Schafrath v. Derwinski, 1 Vet. App. 589 (1991).

If two rating are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that evaluation; otherwise, the lower evaluation will be assigned. 38 C.F.R. § 4.7. 

Staged ratings are assignable during the course of the appeal for an initial rating in order to account for changes in the level of disability. Fenderson v. Shinseki, 12 Vet App 119 (1999). 

For disabilities rated on the basis of limitation of motion, VA is required to apply the provisions of 38 C.F.R. §§ 4.40, 4.45 (2015), pertaining to functional impairment. In applying these regulations, VA should obtain examinations in which the examiner determines whether the disability is manifested by weakened movement, excess fatigability, incoordination, or pain. These determinations are, if feasible, be expressed in terms of the degree of additional range-of-motion loss due to any weakened movement, excess fatigability, incoordination, flare-ups, or pain. DeLuca v. Brown, 8 Vet. App. 202 (1995); see also Mitchell v. Shinseki, 25 Vet. App. 32 (2011); Johnston v. Brown, 10 Vet. App. 80, 84-5 (1997); 38 C.F.R. § 4.59 (2015).

The Court has held that "pain itself does not rise to the level of functional loss as contemplated by VA regulations applicable to the musculoskeletal system." Mitchell, 25 Vet. App. 32. Rather, to support an increased rating pain must result in functional loss, in terms of limitations in the ability "to perform the normal working movements of the body with normal excursion, strength, speed, coordination [, or] endurance." Id., quoting 38 C.F.R. § 4.40.

The evaluation of the same disability under various diagnoses is to be avoided. 38 C.F.R. § 4.14 (2015). However, § 4.14 does not preclude the assignment of separate evaluations for separate and distinct symptomatology where none of the symptomatology justifying an evaluation under one diagnostic code is duplicative of or overlapping with the symptomatology justifying an evaluation under another diagnostic code. Esteban v. Brown, 6 Vet. App. 259, 262 (1994).

When all the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the appellant prevailing in either event, or whether a preponderance of the evidence is against a claim, in which case, the claim is denied. Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

Lumbar Spine Disability

a. Legal Criteria 

The Veteran's lumbar spine disability has been rated under Diagnostic Code 5242, which follows the General Rating Formula for Diseases and Injuries of the Spine. 38 C.F.R. § 4.71a, Diagnostic Code 5242. Associated neurological symptoms are to be rating separately under the appropriate Diagnostic Code. 38 C.F.R. § 4.71a, General Formula, Note (1).

A 20 percent disability rating is assigned for forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees; or, the combined range of motion of the thoracolumbar spine not greater than 120 degrees; or, muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. Id. 

A 40 percent disability rating is assigned for forward flexion of the thoracolumbar spine 30 degrees or less; or, favorable ankylosis of the entire thoracolumbar spine. Id. A 50 percent disability rating is assigned for unfavorable ankylosis of the entire thoracolumbar spine. Id. A 100 percent disability rating is assigned for unfavorable ankylosis of entire spine. Id.

Normal ranges of motion of the thoracolumbar spine are flexion from 0 degrees to 90 degrees, extension from 0 degrees to 30 degrees, lateral flexion 0 degrees to 30 degrees bilaterally, and lateral rotation from 0 degrees to 30 degrees bilaterally. 38 C.F.R. § 4.71, Plate V; see also 38 C.F.R. § 4.71, General Rating Formula for Diseases and Injuries of the Spine, Note 2. Combined range of motion of the thoracolumbar spine refers to the sum of the range of forward flexion, extension, left and right lateral flexion, and left and right rotation. Id. 

Degenerative arthritis established by X-ray findings will be rated on the basis of limitation of motion under the appropriate codes for the specific joint or joints involved. If the limitation of motion is noncompensable, a rating of 10 percent is for application for each such major joint or group of minor joints affected by limitation of motion, to be combined, not added under DC 5003. 38 C.F.R. § 4.7, Diagnostic Code 5003 (2015). 

For VA compensation purposes, unfavorable ankylosis is a condition in which the entire cervical spine, the entire thoracolumbar spine, or the entire spine is fixed in flexion or extension, and the ankylosis results in one or more of the following: difficulty walking because of a limited line of vision; restricted opening of the mouth and chewing; breathing limited to diaphragmatic respiration; gastrointestinal symptoms due to pressure of the costal margin on the abdomen; dyspnea or dysphasia; atlantoaxial or cervical subluxation or dislocation; or neurologic symptoms due to nerve root stretching. Fixation of a spinal segment in neutral position (zero degrees) always represents favorable ankylosis. Id., Note 5.

b. Factual Background 

Service treatment records show that the Veteran sustained a herniated disc at L4-5 and was released from active duty because of it. 

December 2003 treatment records show that the Veteran had been experiencing back pain since February, which was then radiating into the left leg. Treatment records from HealthSouth Diagnostic Center dated in March 2003 include MRI results that showed minimal disc desiccation with a mild loss of signal from the nucleus pulposus. The MRI showed a small far left lateral disc herniation in L4-L5, which filled the inferior aspect of the left intervertebral foramen. There was perineural fat surrounding the left L4 dorsal root ganglion suggesting an absence of nerve root entrapment. There was no central or right lateral stenosis. 

Records from Center for Pain shows in July 2004 the Veteran was treated for back and left leg pain. Deep tendon reflexes were intact with sensation intact to light touch on the left. The assessment was lumbar radiculitis and lumbar disc protrusion.

At a VA examination on December 12, 2005, the Veteran reported that she continued to have pain in the lumbar area. She had been given epidural blocks; and took Celebrex and Ultram and over-the-counter medications. She complained of pain in the center of her back that radiated down her right leg and into her feet. She reported numbness in the balls of her feet.

She reported back pain flares up with bending and lifting. She indicated that she used heat on her back at least five times a week. She reported that she could walk on a treadmill for about five minutes and then had back pain. She denied the use of a back brace. She denied surgery on her back, but she indicated that she believed that she needed to have surgery. She reported that she usually stayed at home during the day, cleaning and cooking. She indicated that she avoided jumping or lifting, because of her back pain.

Examination revealed that thoracolumbar forward flexion to 90 degrees with tightness, left and right lateral flexion to 40 degrees with pain and left; and right rotation to 30 degrees with a creaking sensation. No additional limitation with repetitive motion was seen. MRI results showed disc disease at L4-5 with herniation. Examination of all toes was normal. The Veteran complained of numbness in the ball of the left foot that followed an L5 distribution. She did not have muscle spasm in her back. The examiner diagnosed mild lumbar disc disease and chronic lumbar strain. 

A private MRI of the thoracic spine in July 2006 reportedly was normal. VA treatment records show that in November 2006, the Veteran continued to complain of low back pain.

In her March 2007 notice of disagreement, the Veteran contended that her lumbar spine disability warranted a higher rating because she experienced pain when sitting, standing, walking, and lying down. She stated that she was in constant pain and was unable to use morphine, because it made her sick. 

At a VA examination on July 9, 2007, the Veteran had forward flexion of the lumbar spine to 80 degrees with pain, extension to 20 degrees with pain, lateral flexion to 30 degrees, bilaterally with pain; and lateral rotation to 30 degrees, bilaterally with pain. No additional limitation with repetitive motion was noted. No muscle spasm was noted. The Veteran had "good" reflexes in both legs. Her gait was normal with no foot drop. She reported numbness in her left foot in an L5 distribution. The examiner opined that it was at least as likely as not that the left foot numbness in an L5 distribution was due to her lumbar disc disease.

Another VA examination was provided on February 25, 2010. The Veteran endorsed a history of paresthesias, leg or foot weakness, and unsteadiness. She also endorsed a history of fatigue, decreased motion, stiffness, weakness, spasms, pain, and flare ups. The flare ups were severe, occurred weekly, and lasted one to two days. The precipitating factors included prolonged standing, walking, bending, or riding in a car. The alleviating factors include rest, ice, and pain medications. The Veteran indicated that during flare ups, she was functionally impaired to the level of about 20 percent. She used a cane for ambulation. She reported that she could not walk more than a few yards. 

The examination revealed that the Veteran's head position and posture were normal. There was no evidence of gibbus, kyphosis, listing, lumbar flattening, lumbar lordosis, reverse lordosis, scoliosis or ankylosis. There was objective evidence of spasm on the left and right side, pain with motion, tenderness, and weakness. Range of motion testing revealed forward flexion to 50 degrees, extension to 10 degrees, left lateral flexion to 15 degrees, left lateral rotation to 20 degrees, right lateral flexion to 15 degrees and right lateral rotation to 20 degrees. There was objective evidence of pain on active range of motion. There was no additional limitation of range of motion on repetitive use. 

The Veteran exhibited full strength in all lower extremities. The sensory and reflex examinations were normal. X-ray findings showed minimal degenerative changes of SI joints with atheromatous aorta, and minimal degenerative changes of spondylosis and small posterior spur of the L5. The examiner diagnosed degenerative disease with spondylosis of the lumbar spine and chronic lumbar strain. The examiner noted that the Veteran's disability had significant effects on her usual occupation; the resulting work problems were that she had been assigned different duties and had increased absenteeism. The disability also had an impact on occupational activities insofar as it had led to a lack of stamina, weakness or fatigue, decreased strength in the lower extremities, and pain. The effects on usual daily activities included a severe impact on chores, shopping, recreation, and traveling; it had a moderate impact on bathing and a mild impact on dressing; the disability prevents the Veteran from engaging in sports and recreation. 

Another VA examination was provided on September 20, 2013. The examiner reviewed the file and noted the history of the Veteran's injury. The Veteran complained of constant, moderately severe, low back pain with daily radiating pain down the left leg. She reported stiffness and spasms. She denied the use of medication but endorsed the occasional use of a cane for ambulation and a Tens Unit. She also reported flare-ups that impacted the function of her back. Specifically, she endorsed difficulty with bending, reaching, prolonged walking or stair use. 

Range of motion of the lumbar spine on forward flexion was 90 degrees with pain; extension 10 degrees with pain; right lateral flexion 15 degrees with pain; left lateral flexion 15 degrees with pain; right lateral rotation 15 degrees with pain; and left lateral rotation 15 degrees with pain. Range of motion on repetitive use was flexion 90 degrees, extension 10 degrees, right lateral flexion 15 degrees, left lateral flexion 15 degrees, right lateral rotation 15 degrees and left lateral rotation 15 degrees. 

Functional loss or functional impairment was noted to include less movement than normal, pain on movement, and interference with sitting, standing and/or weight bearing. There was no localized tenderness or pain to palpation for joints and/or soft tissue of the thoracolumbar spine. There was no guarding or muscle spasm of the thoracolumbar spine. There was some limited strength in the Veteran's left ankle and left great toe. There was no muscle atrophy. The Veteran's reflex examination revealed hypoactive left ankle reflexes and the sensory examination was normal. 

Straight leg raise test was positive on the left and negative on the right. There were signs of left lower extremity radiculopathy, shown in the presence of moderate intermittent pain, moderate paresthesias and/or dysesthesias, and mild numbness. The examiner diagnosed moderate left side sciatic radiculopathy. There were no other neurologic abnormalities; she did not have intervertebral disc syndrome. She reported the regular use of a brace to assist with ambulation but this was for the left ankle condition. X-ray findings showed a small far left lateral L4-5 disc herniation. The examiner noted that the condition impacted her ability to perform heavy physical labor, but did not preclude sedentary work. 

c. Analysis

1. Prior to February 25, 2010 

The evidence during this period shows that thoracolumbar forward flexion was limited to 80 degrees, at worst, and the combined range of motion was limited to 220 degrees, at worst. There was no evidence of guarding and while there was evidence of muscle spasms, they were not severe enough to be responsible for abnormal gait or spine contour.

Moreover, the VA examiner found no evidence of ankylosis and the record does not demonstrate the lumbar and thoracic spines are fixed in position.

Additionally, while the Veteran reported flare-ups on the December 2005 VA examination, she did not report any additional loss of range of motion or any other additional disability during flare-ups warranting a higher rating. The examiner did not provide an estimation of additional loss of limitation of motion during flare-ups, but the Veteran is competent to provide an estimate as to the limitation of motion experienced during flare-ups. Further, the Veteran is credible in this regard. Layno v. Brown, 6 Vet. App. 465 (1994). She reported on the examination that there was no additional limitation of motion during flare-ups and there was no additional limitation on repetitive motion. This indicates no easy fatigability or weakness. Although tightness was reported, there were no reports of pain on motion that could cause additional limitation of motion.

Even considering functional impairment caused by the DeLuca factors, these examination results fall squarely within the criteria for a 10 percent disability rating. None of the remaining evidence of record demonstrates that the criteria for a rating of 20 percent or higher are satisfied during this period. 

The examination and treatment reports do not show any periods of doctor-prescribed bedrest, nor has the Veteran reported any such incapacitating episodes over this period. Thus, a rating on this basis is not warranted. 

Therefore, a disability rating in excess of 10 percent for the orthopedic manifestations of the lumbar spine disability is not warranted prior to February 25, 2010. 38 U.S.C.A. § 5107(b); 38 C.F.R. §§ 4.3, 4.7. 

The record demonstrates that there are neurological abnormalities associated with the Veteran's service-connected lumbar spine disability. The Veteran is in receipt of a separate rating for numbness in the left foot, which is discussed below. No other neurological abnormalities were demonstrated prior to February 25, 2010.

The Board has considered the doctrine of reasonable doubt; however, the preponderance of the evidence is against the Veteran's claim, and the doctrine is not for application. Gilbert v. Derwinski, 1 Vet. App 49, 55-57 (1990).

From February 25, 2010 to September 20, 2013

The evidence during this period demonstrated that the Veteran's lumbar spine disability was manifested by forward flexion limited to 50 degrees, at worst, and a combined range of motion of 130 degrees, at worst. The Veteran is entitled to a 20 percent rating during this period on the basis that he had limitation of flexion to 60 degrees or less (bearing in mind the applicability of DeLuca v. Brown, 8 Vet. App. at 204-07 and 38 C.F.R. §§ 4.40 and 4.45).

Left Ankle

The Veteran's left ankle disability has been rated as 10 percent disabling for the entire period on appeal under 38 C.F.R. § 4.71a, Diagnostic Code 5271. 

Diagnostic Code 5271 provides ratings based on limitation of extension of the ankle. 38 C.F.R. § 4.71a, Diagnostic Code 5271. Moderate limitation of ankle motion warrants a 10 percent rating and marked limitation of motion of the ankle is rated as 20 percent disabling. Id. This is the maximum rating provided under this diagnostic code. The terms "moderate" and "marked" are not defined in VA regulations.

Diagnostic Code 5270 provides ratings for ankylosis of the ankle. 38 C.F.R. § 4.71a, Diagnostic Code 5270. Ankylosis of the ankle in plantar flexion between 30 degrees and 40 degrees, or, in dorsiflexion between 0 degrees and 10 degrees, is to be rated as 30 percent disabling; ankylosis of the ankle in plantar flexion at more than 40 degrees, or in dorsiflexion at more than 10 degrees or with abduction, adduction, inversion, or eversion deformity, is to be rated as 40 percent disabling. Id.

Normal ranges of motion of the ankle are dorsiflexion from 0 degrees to 20 degrees, and plantar flexion from 0 degrees to 45 degrees. 38 C.F.R. § 4.71, Plate II (2015).

Factual Background

An X-ray examination at a private facility in February 2005, showed moderately displaced fractures in the distal shaft of the 2nd, 3rd, and 4th metatarsals on the left.

Records from a surgical center show in February 2004 the Veteran underwent open reduction and internal fixation for bimalleolar fracture of left ankle. Records from Southern Orthopedic Surgery show that, in February 2004 and September 2004, the Veteran was treated for the bimalleolar left ankle fracture. In September 2004 the Veteran underwent removal of hardware. A record from Baptist Medical Center show in September 2004 the Veteran was treated for osteomyelitis of left ankle. The Veteran underwent irrigation and debridement with secondary closure of left ankle. 

At the VA examination dated December 12, 2005, the Veteran reported that she continued to have pain in her left ankle. Since her surgery she stated that she believes that her ankle "turns wrong" and she has had several sprains. She reported taking Celebrex as needed for pain in her ankle. She denied seeing her physician recently for treatment for her ankle. She reported that the discomfort in her ankle flares up in rainy weather. She did not identify additional treatment or additional limitation with flare-ups. She had no brace for her ankle. She reported that she had a boot at home that she used to give extra support to her left ankle. She denied any specific activity she cannot perform because of her left ankle. Finally, the Veteran reported that she was no longer able to wear shoes with heels, because of pain in her left ankle. Left ankle range of motion testing revealed dorsiflexion to 20 degrees and plantar flexion to 40 degrees with pain on inversion and eversion of left foot. The Veteran had a scar on her outer and inner left ankle; the outer ankle scar was tender to palpation. There was no swelling in the left ankle. X-ray of left ankle revealed an old healed fracture. 

In her March 2007 notice of disagreement, the Veteran indicated that she disagreed with the rating assigned because of her continued pain and the limits the ankle disability causes. She indicated that she could not run, jump, or wear any type of heel on her shoes. She also reported difficulty walking up and down stairs due to the weakness in the ankle; she stated that the ankle had a tendency to "turn". She reported that she could not walk any distance without pain to that ankle. 

The Veteran submitted a statement in January 2008, disagreeing with the rating assigned for the left ankle. The Veteran reiterated the concerns from the March 2007 statement and also complained of arthralgia. The Veteran indicated that she had to use a cane for ambulation and wore an ankle brace for stability. The Veteran indicated that she had developed neuritis that deteriorates her ability to be self-supportive in her daily activities. 

The Veteran was provided a VA examination in February 2010, at which time she reported that she had broken her left ankle in 2003. Surgical repair was conducted in March 2003. In 2004, the metal plate that had been placed in the left ankle was removed. She continued have left ankle pain, swelling, and difficulty bearing weight on the left ankle.

The examiner noted that the Veteran's left ankle symptoms included deformity, giving way, instability, pain, stiffness, weakness, incoordination, decreased speed of joint motion as well as redness, swelling, and tenderness. The examiner noted that the condition affects the motion of the joint. The Veteran reported severe, weekly flare ups, which lasted for one to two days. The precipitating factors were prolonged walking, standing, and stair climbing and that the alleviating factors were ice, rest, and pain medication. She reported that with flare-ups, her left ankle pain causes functional impairment to the level of about 30 percent. 

On examination, there were no constitutional symptoms of arthritis or incapacitating episodes of arthritis. The Veteran was unable to stand for more than15-30 minutes and unable to walk more than a few yards. She wore a brace and used a cane intermittently, but frequently. The examiner noted that the Veteran had an antalgic gait; there was no other evidence of abnormal weight bearing, no loss of a bone or part of a bone, and no inflammatory arthritis. 

The examiner's findings included deformity, tenderness, instability, and weakness. The examiner reported there was some laxity with inversion and eversion of the left ankle. There was no tendon abnormality. Range of motion testing of the left ankle revealed that the Veteran had dorsiflexion to 0 degrees and plantar flexion to 130 degrees with objective evidence of painful motion. 

There was evidence of pain following repetitive motion but no additional limitations of motion. There was also no joint ankylosis. The examiner diagnosed status post-surgical fixation of a fracture of the left medial malleolus and minimal degenerative changes of the anterior talo-calcaneal joint. The examiner found that the disability had significant effects on the Veteran's usual occupation, including from decreased mobility, problems with lifting and carrying, lack of stamina, weakness or fatigue, decreased strength in the lower extremity, and pain. 

The examiner also noted that the disability had an effect on the Veteran's usual daily activities; the examiner found that there was a severe impact on the Veteran's ability to do chores, shop, exercise, or travel and that there was a moderate impact on recreation and bathing. Further, the examiner found that the disability prevents the Veteran from being able to exercise, engage in sports, or drive. 

Another examination was provided in September 2013. The examiner reviewed the file and noted the Veteran's history of a left ankle fracture. The Veteran denied the use of current medications, but endorsed the use of a brace for ambulation and noted that she uses rest and elevation to control the symptoms as well. 

The Veteran reported flare-ups that impact her ability to function. She indicated that the flare-ups that were worse with prolonged walking and standing. The Veteran had left ankle plantar flexion to 25 degrees and painful motion began at 0 degrees; the Veteran had left ankle plantar dorsiflexion to 10 degrees and painful motion began at 0 degrees. 

On repetitive motion testing, the Veteran had plantar flexion to 20 degrees and dorsiflexion to 10 degrees. The examiner noted that the Veteran has functional loss or functional impairment, including less movement than normal, weakened movement, pain on movement, and interference with sitting, standing, and weight bearing. There was no pain on palpation. The Veteran exhibited reduced strength in the left ankle, with active movement against some resistance with plantar flexion and dorsiflexion. The joint stability tests were normal. The examiner noted that the Veteran had pain and limitation of motion as residuals to the ankle surgery. The examiner noted the scars from the surgeries, but indicated that they were not painful or unstable, and the total area of all the scars was not greater than 39 square centimeters.

X-ray testing revealed partially threaded screw seen through the medial malleolus with no failure or loosening. There was no acute fracture or dislocation noted. The ankle mortise was intact with no significant degenerative changes. The soft tissues were unremarkable. The examiner noted that the Veteran's ankle condition impacted her ability to work and specified that the condition impacts heavy physical labor but does not preclude sedentary work. The Veteran indicated that she has been unemployed since she left the military in 2004. She reported that she is not working due to problems with standing and she reported that she no longer drives due to not feeling safe.

c. Analysis

The February 2010 examination showed dorsiflexion to 0 degrees and plantar flexion to 130 degrees with objective evidence of painful motion. The normal range of motion of plantar flexion is 45 degrees. 38 C.F.R. § 4.71, Plate II (2015). The examiner's report of plantar flexion seems improbable given findings on other examinations. The December 2005 left ankle range of motion testing revealed dorsiflexion to 20 degrees and plantar flexion to 40 degrees and the September 2013 VA examination revealed that, after repetitive use testing, the Veteran had dorsiflexion to 10 degrees and plantar flexion to 20 degrees, which demonstrates a reduction in her range of motion by at least 50 percent. Throughout the appeal period the Veteran's disability has remained relatively similar, the Board finds that the reasonable doubt is resolved in favor of the Veteran to award a 20 percent rating for the entire period on appeal. 38 C.F.R. § 4.71a, Diagnostic Code 5271. 

Under the current regulations, a rating excess of 20 percent for the Veteran's left ankle disability would require ankylosis. Ankylosis of the ankle in dorsiflexion between 0 degrees and 10 degrees would warrant a 30 percent rating under Diagnostic Code 5270. Ankylosis is the immobility and consolidation of a joint due to disease, injury, or surgical procedure. Lewis v. Derwinski, 3 Vet. App. 259, 259 (1992). VA examiners have found that the Veteran has significant remaining motion in the left ankle. The Veteran has not reported ankylosis. 

The Board notes that the examiner who provided the December 2005 examination noted that the Veteran's ankle scar was painful, the other examiners did not find that the scar was painful, unstable, or measured an area greater than 39 square centimeters. As such, the December 2005 examination report is an outlier in this regard, and a separate rating for the Veteran's scar is not warranted. 

In so deciding, the Board notes that the provisions of DeLuca were considered; however, as the Veteran is already receiving the maximum disability rating available based on symptomatology that includes limitation of motion, functional factors are not for consideration where a claimant is in receipt of the highest rating based on limitation of motion, and a higher rating requires ankylosis. See Johnston v. Brown, 10 Vet. App. at 84-5; 38 C.F.R. §§ 4.40, 4.45.

A 40 percent rating would be applicable if there was actual loss of use of the foot. Loss of use exists where there is no effective function remaining other than that which would be equally well served by amputation at the site of election with a prosthesis in place. 38 C.F.R. § 4.63 (2015). The September 2013, examiner specifically found that the ankle disability was not of this severity. Given the examiner's medical expertise, the opinion is of significant probative value. It bolstered by the findings of residual strength and gait function.

As such, a 20 percent rating is warranted for the Veteran's left ankle disability. The benefit of the doubt has been resolved in her favor. 38 U.S.C.A. § 5107(b); Gilbert.

Left Foot Numbness

a. Legal Criteria 

The Veteran has been awarded a separate rating for disability of the sciatic nerve on the left. 38 C.F.R. § 4.124a, Diagnostic Codes 8525 (2015). The Veteran is in receipt of a 10 percent rating, for mild impairment, prior to September 20, 2013, and a 20 percent rating for moderate impairment thereafter.

The assignment of a particular diagnostic code is "completely dependent on the facts of a particular case." See Butts v. Brown, 5 Vet. App. 532, 538 (1993). One diagnostic code may be more appropriate than another based on such factors as an individual's relevant medical history, the diagnosis and demonstrated symptomatology. Any change in a diagnostic code by a VA adjudicator must be specifically explained. See Pernorio v. Derwinski, 2 Vet. App. 625, 629 (1992). In this case, the Board has considered whether another rating code is "more appropriate" than the one used by the RO, Diagnostic Code 8205. See Tedeschi v. Brown, 7 Vet. App. 411, 414 (1995). 

In this case, the Board finds that the Veteran's disability is more properly rated under Diagnostic Code 8520, for impairment of the sciatic nerve. The September 2013 VA examiner specifically diagnosed moderate left side sciatic radiculopathy. 

A 10 percent evaluation is warranted for mild incomplete paralysis of the sciatic nerve. 38 C.F.R. § 4.124a, Diagnostic Code 8520. A 20 percent evaluation is warranted for moderate incomplete paralysis. Id. Moderately severe incomplete paralysis of the sciatic nerve is rated at 40 percent; and a 60 percent rating is assigned for severe incomplete paralysis with muscle atrophy. Complete paralysis where the foot dangles and drops, no active movement is possible muscles below the knee, flexion of the knee is weakened or (very rarely) lost; warrants an 80 percent rating. Id.

When the nerve involvement is wholly sensory, the rating should be for the mild, or at most, the moderate degree. 38 C.F.R. § 4.124a.

b. Factual Background

During a December 2005 VA examination, the Veteran complained of left foot numbness in the ball of her left foot, which the examiner noted "follows an L5 distribution." 

Again in July 2007, during another VA examination, the Veteran complained of numbness in her left foot with an L5 distribution. The examiner opined that it is at least as likely as not that the Veteran's reported numbness in her left foot in an L5 distribution is due to her lumbar disc disease. 

A VA examination dated in February 2010 revealed that sensory testing of the lower extremities was 2/2 on vibration, pain, light touch, and positions. Reflex examination was hypoactive for left knees and ankles. 

Another VA examination was provided September 2013, which showed signs and/or symptoms due to radiculopathy. There was moderate intermittent pain, paresthesias and/or dysesthesia of the left lower extremity. There was also mild numbness of the left lower extremity. The examiner noted that the sciatic nerve was involved and that the severity of the radiculopathy was moderate. 

c. Analysis

Resolving all reasonable doubt in favor of the Veteran, the Board finds that for the entire period on appeal, the Veteran's left foot numbness has been moderate in severity. The Veteran's reports and the objective findings indicate that she experiences left leg sciatica symptoms of moderate pain, numbness, as well as hypoactive reflexes. The Veteran has not reported any increased symptomatology throughout the appeal period; instead her complaints have remained similar throughout. Based on the above evidence, a 20 percent rating is warranted for the left foot numbness; rated on the basis of moderate incomplete sciatic nerve paralysis. Given the above, and resolving reasonable doubt in the Veteran's favor, a 20 percent rating for left foot numbness, but no more, is warranted. 38 C.F.R. § 4.124a, Diagnostic Code 8520 (2015). The benefit of the doubt has been resolved in her favor. 38 U.S.C.A. § 5107(b); Gilbert.

ORDER

Prior to February 25, 2010, an initial rating in excess of 10 percent for the lumbar spine disability is denied. 

From February 25, 2010, to September 19, 2013, an initial rating of 20 percent, for the lumbar spine disability is granted.

For the entire period on appeal, an initial rating of 20 percent, but no more, for the left ankle disability is granted. 

For the entire period on appeal, an initial rating of 20 percent, but no more, for left foot numbness is granted. 

REMAND

The most recent VA examination for the Veteran's back disability was in 2013. In January 2016, she submitted a statement reporting the onset of right leg and foot numbness. This report indicates a worsening of the back disability. A new examination is required. Snuffer v. Gober, 10 Vet. App. 400 (1997).

The Board previously remanded the claims in October 2014. With regard to the Veteran's claim of entitlement to service connection for pancreatitis, the Veteran was afforded a VA examination in December 2005 in conjunction with her claim of service connection for pancreatitis. At the time of the examination, she reported that she had been told that her pancreatitis was related to her use of alcohol. The examiner noted that the Veteran had been hospitalized 2 times in the past year due to pancreatitis. Upon physical examination, the examiner diagnosed episodic pancreatitis treated with IV fluids and bowel rest. The examiner determined that the condition was more likely than not due to alcohol abuse. He further noted that pancreatitis was not diagnosed at the examination.

Then, in a December 2005 VA examination for PTSD, the examiner noted that the Veteran had a history of alcohol abuse. In a subsequent VA examination for PTSD dated in September 2013, the Veteran reported that the she began drinking heavily in 2001. The examiner noted that the Veteran's alcohol dependence was in remission. Although a history of alcohol abuse was noted at both the December 2005 and September 2013 VA examinations for PTSD, the examiners did not provide an opinion as to whether the Veteran's alcohol dependence was related to PTSD. 

Given the above, the Board remanded the claim because there was an indication that the Veteran's alcohol dependence may be related to her service-connected PTSD. In December 2015, the examiner who examined the Veteran in September 2013 found that the Veteran was not diagnosed with any alcohol related disorder at that time. At the time of the examination, the Veteran indicated that she had not drank in the "last couple years" and as such the examiner indicated that she did not know if the Veteran met the criteria for an alcohol use disorder since she was last evaluated in 2013. 

This opinion is not adequate for purposes of deciding the claim. Specifically, the Board requested an opinion regarding whether the Veteran's alcohol dependence may be related to her service-connected PTSD. The Board recognizes that the examiner who provided the addendum opinion could not opine as to the presence of a current alcohol dependence disorder; however, the inquiry is not whether the Veteran has a current diagnosis of an alcohol dependence disorder, but rather, whether any previous diagnosis of alcohol dependence or abuse was related to her PTSD. The evidence of record shows that during the course of the appeal, the Veteran had been noted as having a history of alcohol abuse and alcohol dependence. The requirement for service connection that a current disability be present is satisfied when a claimant has a disability at any time during the pendency of the claim even if the disability resolves prior to the adjudication of the claim. See McClain v. Nicholson, 21 Vet. App. 319, 321 (2007). When an examiner finds that there is no current disability but there are prior diagnoses during the appeal period, the Board is required to obtain an opinion as to whether the prior diagnosis was made in error or the prior disability is in remission. Romanowsky v. Shinseki, 26 Vet. App. 303 (2013). Therefore, because the previous examiner indicated that she could not opine as to the presence of any current alcohol dependence disorder, an examination and opinion is required to determine the relationship of any previously or currently diagnosed alcohol dependence disorder and the Veteran's service-connected PTSD. 

A remand by the Board confers on the Veteran, as a matter of law, the right to compliance with the remand order. Stegall v. West, 11 Vet. App. 268, 271 (1998). Accordingly, the additional development specified in the Board's prior remand must be conducted prior to adjudication of the Veteran's claim of entitlement to service connection for pancreatitis. 

As noted above a claim of entitlement to a TDIU was raised by the record. The Veteran has not been provided an examination to determine whether her service-connected disabilities prevent her from engaging in substantially gainful employment for which her education and occupational experience would otherwise qualify her. Friscia v. Brown, 7 Vet. App. 294 (1994); see also Floore v. Shinseki, 26 Vet. App. 376, 381 (2013) (in a multiple-disability TDIU determination, "the need for a combined-effects medical examination report or opinion... is to be determined on a case-by-case basis, and depends on the evidence of record" at the time the decision). As such, a remand is required to obtain an opinion that describes the functional limitations caused by the Veteran's service-connected PTSD, total abdominal hysterectomy with left salpingo-oophorectomy, numbness in the left foot, lumbar spine disability, and left ankle disability.

Because the Board is undertaking significant development with regard to the TDIU issue, it deferring consideration of referral of individual disabilities for extraschedular ratings. Brambley v. Principi, 17 Vet App 20 (2003).

Accordingly, the case is REMANDED for the following action:

1. Schedule the Veteran for a VA examination regarding whether the alcohol abuse is, or was, secondary to service connected PTSD. Following a review of the claims file, the examiner is to provide an opinion to the following:

a. Whether the Veteran's previously or currently-diagnosed alcohol abuse is at least as likely as not (50 percent probability or more) proximately due to the service-connected PTSD (e.g. the alcohol abuse was an attempt to self-medicate).

b. Whether the Veteran's previously or currently-diagnosed alcohol abuse is it at least as likely as not (a 50 percent or more likelihood) aggravated by the Veterans service-connected PTSD?

If alcohol abuse is aggravated by PTSD, the examiner should opine as to whether there is medical evidence created prior to the aggravation or between the time of onset and the current level of alcohol dependence that establishes a baseline for the disability.

The examiner should provide a rationale for each opinion provided. If the examiner is unable to provide an opinion without resort to speculation, he or she should explain why this is so and what, if any, additional evidence would be necessary before an opinion could be rendered. 
 
3. Obtain a VA opinion regarding the functional and occupational impact of the Veteran's service-connected PTSD, total abdominal hysterectomy with left salpingo-oophorectomy, numbness in the left foot, lumbar spine disability, and left ankle disability. If the VA examiner determines that an examination is necessary, schedule the examination. The examiner should comment on the effect of these disabilities on the Veteran's ability to perform the types of work for which she is otherwise qualified. The examiner should provide reasons for any opinions. 

If the examiner is unable to provide the needed opinion without resorting to speculation, the examiner should state whether the inability is due to the limits of the examiner's medical knowledge, the limits of medical knowledge in general, or there is additional evidence that, if obtained, would permit the opinion to be provided.

4. If the decision remains adverse to the Veteran, issue a supplemental statement of the case and return the case to the Board.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).

______________________________________________
Mark D. Hindin
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs